### In re BELFAST MESH UNDERWEAR CO.

(District Court, D. Connecticut. February 16, 1911.)

#### No. 1,714.

BANKRUPTCY (§ 288*)—REFEREE—POWERS.

    A referee in bankruptcy could order that property be turned over to the trustees, where he decided that title to it was in the estate, and not in respondents, who claimed it as collateral security pledged by bankrupt.

    [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 288.*]

In the matter of the Belfast Mesh Underwear Company, bankrupt. On review of an order by the referee. Order affirmed.

The following is respondents' demurrer to the petition of Wellington B. Smith and others, trustees:

The respondents demur to the petition because:

(1) It is alleged that the property and accounts and money described in the petition were pledged by said Belfast Mesh Underwear Company to the respondents as collateral security for notes and contracts, and are so held and claimed by them as pledgees and adverse claimants to the bankrupt estate and the trustees.

(2) It is not alleged that the possession of said property and accounts and money was in the bankrupt at the time of filing the petition, or have since been pledged to the respondents.

(3) It appears from the petition that the respondents, as third parties, are interested in said property and accounts and money, and are adverse claimants to the same, and it is not alleged that they have consented to have their

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

adverse claims summarily determined by this court by petition or otherwise.

(4) This court has no jurisdiction to summarily determine on petition the rights of the respondents, as adverse claimants, to said property and accounts and money, with or without their consent; but such adverse claims must be determined either by a bill in equity or a suit at law.

(5) No legal grounds are set forth for determining the right or title of the respondents as adverse claimants to said property and accounts and money so pledged to them as collateral security, by the summary process of petition.

(6) No facts are alleged to show that the pledge of said property and accounts and money to the respondents as collateral security is null and void, or voidable, by the trustee or by the bankrupt, under the bankruptcy act, or under the laws of any state in which said property and accounts are or were situated at the time of the pledge, or that such pledge was fraudulent or a preference.

(7) It is not alleged and does not appear that said property and accounts and money were pledged to the respondents after the filing of the petition or with knowledge of it.

(8) The respondents protest against a summary determination of their adverse claim to said property and accounts and money by petition or otherwise.

## The following is the petition for review:

In the matter of the petition filed by the trustees of the said bankrupt estate, asking the court to determine the title to certain property claimed by the respondents, William H. Dayton, Bryant S. Kiefer, and John H. Giles, upon which petition an order was issued by Frank B. Munn, one of the referees in bankruptcy, citing and directing the said respondents to appear before him and show cause, if any they had, why an order should not issue directing them, the respondents, to deliver to the said trustees certain property, warehouse receipts, and choses in action claimed by the respondents, come William H. Dayton, Bryant S. Kiefer, and John H. Giles, by their attorneys, and file herewith their petition for a review of the orders of the referee entered herein on the 21st day of September, 1908, and on the 10th day of May, 1909, and say that the said referee manifestly erred in ordering and directing the respondents to turn over to the said trustees in bankruptcy the money in the Torrington National Bank claimed by them, and in holding that the respondents had no title to the money in the Torrington National Bank received from a sale of goods for which they hold proper warehouse receipts, and in ordering and directing the respondents to turn over to the trustees in bankruptcy said money and goods in Kelley's Warehouse, or the proceeds of the same, if the same had been sold.

The errors complained of are as follows, to wit:

(1) In overruling the demurrer filed by the respondents to said petition.

(2) In holding that he, said referee, had jurisdiction to proceed to determine in a summary manner the adverse claims and rights of the respondents, the said Dayton, Kiefer, and Giles, to the property described in said petition.

(3) In issuing a notice and order requiring the said Dayton, Kiefer, and Giles to show cause before him, as said referee, why the prayer of said petition should not be granted.

(4) In assuming and taking jurisdiction of said petition, and issuing the orders that he, said referee, issued thereon.

(5) In finding, as set forth in paragraph 6 of the "Finding of Facts" made by said referee, without any evidence whatever of such matters having been offered at the hearing upon said petition, and without any evidence at such hearing upon which to predicate such finding.

(6) In finding as set forth in paragraph 7 of the "Finding of Facts," because the same are irrelevant and immaterial, and have no relation to the facts set forth in the petition, and because the same was not mentioned, stated, or claimed by any person at said hearing.

(7) In finding as set forth in paragraph 13 of the "Finding of Facts," without any evidence whatever of said matters, offered or produced at the hearing upon said petition, upon which to base such finding.

(8) In holding or finding that any dealings of the respondents, Dayton, Kiefer, or Giles, with the Hurlbut National Bank, had any connection with the allegations of the petition, and because there was no evidence at said hearing of any such claimed facts.

(9) In finding as set forth in paragraph 14 of the "Finding of Facts," without any evidence whatever of such matters, offered or produced at the hearing upon said petition, upon which to base any such finding.

(10) In not finding that the notes mentioned in paragraph 15 of the "Finding of Facts" were in fact the notes of the corporation, and discounted at said the Torrington National Bank for the benefit of said corporation, and in disregarding the evidence of Hosea Mann, the cashier of said national bank, which was the only evidence upon that subject.

(11) In finding, without any evidence and against the evidence at said hearing, that the said Torrington National Bank carried said note only as an indorsed note, and not as a collateral note.

(12) In not finding that the Torrington National Bank carried said notes in the same manner that it carried all other notes secured by collateral, and that the said national bank held such invoices of the American Knitting Mills Company as collateral for the security of such notes.

(13) In finding as set forth in paragraph 18 of the "Finding of Facts," without any evidence or claim that such fact was claimed as evidence at the hearing on said petition, because such fact, from whatever source it came, was irrelevant and immaterial, and could not and did not affect the title of the Torrington National Bank to the security it held in connection with said notes.

(14) In finding as set forth in paragraph 21, without any evidence offered of such matter, or claim made at the hearing on said petition that such fact was claimed, and because no opportunity was given to the respondents to object to the consideration of any such fact which is now set forth as material in said "Finding of Facts."

(15) In not finding, in connection with paragraph 25, upon the undisputed evidence offered at said hearing, that an agreement existed between the said corporation and the Torrington National Bank that warehouse receipts should be deposited and were so deposited for the protection of all paper in said bank and all indorsers liable thereon.

(16) In finding as set forth in paragraph 30, without any evidence whatever, except that the indorsers who paid any note took such note and the collateral held by said bank to secure the same.

(17) In finding as set forth in paragraph 33, because there was no evidence offered at said hearing to support or justify any such fact, and because the undisputed evidence offered at said hearing was that the bank held said collateral in accordance with its established custom, and for the security of all notes, and because the same is a conclusion not warranted or justified by any evidence produced at the hearing on said petition, or by any fact set forth in said "Finding of Facts."

(18) In finding as set forth in paragraph 39, because there was no evidence upon which to base any such finding at said hearing.

(19) In finding as in paragraph 40 of said "Finding of Facts," without evidence, and because there was no evidence that the respondents, Dayton, Kiefer, and Giles, did any act contrary to the established rules of law relating to indorsers of negotiable paper.

(20) In finding as in paragraph 41, without any evidence whatever of any such matters offered or produced in connection with the hearing on said petition, and because the same is directly contrary to the evidence produced at said hearing.

(21) In placing the burden of proof, under the allegations of said petition, on the respondents, Dayton, Kiefer, and Giles, and in not placing such burden of proof upon the petitioners.

(22) In not holding and ruling that the respondents, Dayton, Kiefer, and Giles, were subrogated to the rights of the Torrington National Bank with respect to all the property mentioned in said petition.

(23) In finding as facts matters regarding which no evidence was offered at the hearing on said petition, and in not allowing the respondents an oppor-

tunity to know what facts were being considered by said referee, and without giving them any opportunity to refute or explain the same.

(24) In requiring the respondents, said Dayton, Kiefer, and Giles, to go ahead and assume the burden of proof, and present their evidence at the hearing on said petition, without any evidence of any kind being first offered by the petitioners, and in not requiring the petitioners to prove the allegations of their petition.

(25) In not placing the burden of proof upon the petitioners, and requiring them to first offer evidence of the facts alleged in their petition, because it appears from the evidence, and was not contradicted, that the respondents, Dayton, Kiefer, and Giles, were subrogated to and had all the rights of the Torrington National Bank in and to the invoices of goods shipped to said American Knitting Mills Company, and to said warehouse receipts delivered to them by said Torrington National Bank upon the payment by them of their obligations as indorsers.

(26) In holding that the taking of the invoices and warehouse receipts by the respondents, Dayton, Kiefer, and Giles, from the Torrington National Bank, upon payment by them to said bank of the amount of said notes in compliance with their obligations as indorsers of said notes, constituted a preference under the law.

(27) In granting the prayer of the petition, and making the order directing the delivery of said property and the proceeds thereof to the trustees, upon the evidence produced at the hearing upon said petition.

(28) The said referee erred in finding that the invoices of the account of the American Knitting Mills Company held by the Torrington National Bank is the property of the bankrupt estate, and that the respondents, Dayton, Kiefer, and Giles, have no right, title, interest, or claim to it.

(29) Said referee erred in holding that the warehouse receipts, held by the Torrington National Bank, and by said bank delivered to the respondents after the payment by them of their obligations as indorsers of said notes, and after the respondents had taken possession of such warehouse receipts, belong to the trustees, and that the respondents had no right, title, or interest therein.

Wherefore the said William H. Dayton, Bryant S. Kiefer, and John H. Giles pray that said order entered herein by the referee on May 10, 1909, and the findings of said referee with reference to the matters as herein set forth, and all orders made by said referee in connection with said petition, be reviewed by the honorable judge of the District Court of the United States for the District of Connecticut, and that the referee herein certify the said questions to the said judge of said court for that purpose, and that the referee send up with his said certificate all of the evidence relating thereto taken before him on the trial of said petition.

Charles Phelps, for petitioners.

L. J. Nickerson and W. W. Bierce, for respondents.

PLATT, District Judge. The bulk of the record staggers one for a moment, but after examination it turns out that the issue presented is a simple one, which can be easily solved.

The respondents herein did what they could to keep the corporation, of which they were the soul and spirit, out of bankruptcy. It went there, however, despite their efforts, and they at once filed claims against the estate in a sufficient amount to make their wishes potent in the selection of trustees. The creditors elected trustees, and to them the bankrupt law sends the title to the bankrupt's property.

Long after entering upon their duties the trustees went to the referee with the petition which is the basis of the present contention. It alleges in substance that a certain portion of the bankrupt estate, consisting of a large and available open account, moneys on deposit which are the proceeds from goods sold out of the warehouse, and

goods still remaining in the warehouse, was claimed by respondents as collateral security for notes and contracts, given and pledged by said bankrupt to them for said notes and contracts, and upon such allegations asks the court to determine whether the title to said property was in the estate or in said respondents.

Said respondents demurred to the petition, setting up that they were adverse claimants, and that because of such fact the title to the property claimed could only be determined in a plenary suit.

The referee, in his decision upon the demurrer, took the position that the court had jurisdiction of the parties and the subject-matter for the purpose of ascertaining whether the claim was adverse or not. He proceeded to hear the petitioners and respondents in full and at great length for that purpose, and, having ascertained, after an exhaustive hearing, that the respondents were not adverse claimants, retained jurisdiction, and decided that the title to the property was in the estate.

Having made such finding, he proceeded to perform his obvious duty, which was to issue the order which the respondents now criticise, viz., that the property in question should be turned over to the trustees.

My mind is absolutely free from doubt that it was lawful for him to make the order. The decisions which warrant his order are set forth at length and with intelligent care in his certificate, and it would add nothing to say over again what he has said so well. By doing so the writer might gain credit with the unthinking, but he has no ambition for that kind of reputation.

The order is affirmed.